

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-1999

# In Re: First Merch. Accept. Corp. v. JC Bradford & Co.

Precedential or Non-Precedential:

Docket 98-5377

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"In Re: First Merch. Accept. Corp. v. JC Bradford & Co." (1999). *1999 Decisions.* Paper 322.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/322

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 14, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5377

IN RE: FIRST MERCHANTS ACCEPTANCE CORPORATION,
      Debtor

v.

J. C. BRADFORD & CO.,
      Appellant

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 97-cv-01500)
District Judge: Hon. Joseph J. Farnan, Jr.

Argued July 26, 1999

Before: SLOVITER, NYGAARD and McKEE, Circuit Judges

(Filed: December 14, 1999)

      Lawrence R. Ahern, III (Argued)
      Gullett, Sanford, Robinson & Martin
      Nashville, TN 37219-888

       Attorney for Appellant

      Laura Davis Jones
      James P. Hughes, Jr.
      Brendan L. Shannon (Argued)
      Christian Douglas Wright
      Young, Conaway, Stargatt & Taylor
      Wilmington, DE 19899-0391

       Attorneys for In Re: First
       Merchants Acceptance Corp.

P. Matthew Sutco (Argued)
Martha L. Davis
United States Department of Justice
Washington, D.C. 20530

Patricia A. Staiano
John D. McLaughlin, Jr.
Frederic J. Baker
Daniel K. Astin
United States Department of Justice
Philadelphia, PA 19106

Attorneys for United States
Trustee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This appeal raises a statutory interpretation question of first impression in this court and, as far as can be ascertained, in any of the courts of appeals. At issue is whether the 1994 amendment to S 503 of the Bankruptcy Code which added the authorization for reimbursement of expenses to a member of a creditors committee thereby also authorized reimbursement of attorney's fees incurred by such a member. The Bankruptcy Court[1] ruled that the Code prohibits any reimbursement of professional fees incurred by committee members. The creditor appeals.

I.

First Merchants Acceptance Corp. ("FMAC" or "the Debtor"), a company that purchases used-car loans from auto dealers, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on July 11, 1997. Appellant J.C. Bradford & Co. ("Bradford"), which holds a number of FMAC promissory notes, is a general unsecured

_____

1. The District Court sat as the Bankruptcy Court. Because the rulings at issue are in the province of a Bankruptcy Court in the first instance, we will refer to the court in that capacity.

creditor of FMAC. Bradford states that the assets and liabilities of FMAC were each over $100 million and that there were between 200 and 299 creditors.

Shortly after the petition was filed the United States Trustee formed an eight-member committee of unsecured creditors ("the committee"). Bradford, being a holder of one of the largest claims against the Debtor, was appointed to the committee and served as its chairman.

Pursuant to S 1103(a) of the Bankruptcy Code, which permits the committee to employ attorneys and other professionals with the approval of court, the committee filed two successive applications with the Bankruptcy Court to retain the services of two firms as legal counsel. The Bankruptcy Court in successive orders granted the applications to employ the law firm of Pepper, Hamilton & Scheetz LLP (now Pepper Hamilton LLP) and Faegre & Bensen LLP as counsel.

Bradford retained the law firm of Bass, Berry & Sims, PLC ("Bass"), as its own counsel in the course of the bankruptcy. Bass had apparently represented Bradford with respect to the notes before the bankruptcy. According to Bradford, Bass was retained by Bradford to assist it both in its capacity as a creditor and as a member and chair of the committee. Bradford also contends that some services Bass performed were with the knowledge of, and at the request of, the committee's counsel and members of the committee.

The Bankruptcy Court approved a Chapter 11 plan for FMAC on March 16, 1998. Shortly thereafter, Bradford applied for reimbursement, as an administrative expense, of some of the attorney's fees it paid to Bass that it incurred as a member and the chairman of the committee. Applications for reimbursement for legal services and financial services were also filed by the Debtor and by the committee as a whole. The Bankruptcy Court approved the applications filed by the Debtor and the committee, but denied Bradford's application. In so doing, the court reasoned that the relevant statutory provisions, 11 U.S.C. S 503(b)(3) and (4), were ambiguous with respect to whether an individual committee member may obtain

reimbursement for professional fees and that the legislative history and the policies of the Bankruptcy Code suggest that Congress intended to prohibit recovery of such fees as administrative expenses. See In Re First Merchants Acceptance Corp., No. 97-1500, slip op. at 5-8 (Bankr. D. Del. June 26, 1998) (herein slip op.). Bradford timely appealed this decision.

II.

Bradford's position is based squarely on the language of the statute. It contends that S 503(b) of the Code, as amended in 1994, expressly permits a member of a creditors committee to recover reasonable compensation for professional services incurred in its capacity as a member of that committee. It argues that because the meaning of the statute is clear on its face, our inquiry should be limited to the text of the provision, without recourse to other evidence of congressional intent.

The Debtor, following the District Court's reasoning, urges that the 1994 amendment to S 503(b) created an ambiguity in the statute because S 503(b)(4) authorizes fees for reimbursable professional services rendered by the attorney of an "entity," but a "member of a committee" is not included within the definition of an "entity" in S 101(15) of the Code. The Debtor then argues that as a result of this ambiguity we can resort to the statute's purpose and its legislative history to ascertain whether a member of a committee is included within an "entity." The Trustee, who also urges affirmance, places his principal emphasis on the argument that Bradford's reading of the statute is demonstrably at odds with the purpose of the Bankruptcy Code as a whole and the legislative history of S 503(b)(3)(F). He argues that the better reading of S 503(b) would not allow recovery of attorney's fees by a member of a committee.

A.

THE TEXT OF THE STATUTE

We turn first to the text of S 503(b)(3)(F) and S 503(b)(4) because their interaction is central to this appeal. Section

4

503(b)(3) lists those entities who are entitled to recover as administrative expenses their "actual, necessary expenses" (other than the professional fees specified in subsection (b)(4)). That section reads:

> (b) After notice and a hearing, there shall be all owed, administrative expenses . . . of this title, including --
>
> . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by--
>
>  (A) a creditor that files a petition under s ection 303 of this title;
>
>  (B) a creditor that recovers, after the court' s approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
>  (C) a creditor in connection with the prosecut ion of a criminal offense relating to the case or to the business or property of the debtor;
>
>  (D) a creditor, an indenture trustee, an equit y security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
>  (E) a custodian superseded under section 543 o f this title, and compensation for the services of such custodian; or
>
>  (F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee[.]

11 U.S.C. S 503. It was Subsection (F), the last of the six subsections, that was added to S 503 by the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, S 110, 108 Stat. 4106, 4113. It is that section that authorizes members of creditors committees (who are among those who are "appointed under section 1102") to recover their "actual"

5

and "necessary expenses." No party to this appeal questions that.

The case has arisen because the addition of S 503(b)(3)(F) affects those who are authorized under S 503(b)(4) to seek reasonable compensation for professional services, such as, inter alia, an attorney. Section 503(b)(4) allows as "administrative expenses"

> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. S 503(b)(4) (emphasis added).

Section 503(b)(4) was not amended in 1994. However, because the two subsections, (b)(3) and (b)(4), are interdependent, and the allowance for reimbursement of professional fees in (b)(4) is tied to the list of "entities" in (b)(3), Bradford sees the language as unambiguous. Section 503(b)(4) authorizes claims for attorney's and accountant's fees incurred by all entities who are allowed to claim administrative expenses under S 503(b)(3). Members of a creditors committee are plainly entitled to recover administrative expenses under S 503(b)(3)(F). A straightforward reading of the statute, therefore, authorizes reasonable allowances for attorney's fees or other professional fees incurred by a member of a committee, "if such expenses are incurred in the performance of the duties of such committee." 11 U.S.C. S 503(b)(3)(F). It seems inescapable from the statutory language that when Congress enacted the 1994 Bankruptcy Reform Act and added members of creditors committees to the list in S 503(b)(3) of those who can claim "actual" and "necessary expenses," it simultaneously expanded the list of entities who are entitled to reimbursement for professional fees under S 503(b)(4).

Notwithstanding what appears to be the unambiguous language of S 503(b) to the effect that a committee member

6

may recover attorney's fees, the Bankruptcy Court found an ambiguity in the term "entity" as used inS 503(b)(4) insofar as it applies to a member of a creditors committee. Slip op. at 4-5. The Bankruptcy Court followed the earlier holding of a California bankruptcy court, see In Re County of Orange, 179 B.R. 195 (Bankr. C.D. Cal. 1995), when it denied Bradford's application for attorney's fees. In doing so, it stated that "[s]ection 101(15) does not specifically include `a member of a committee' as that phrase is specifically utilized in Section 503(b)(3)(F), and the Court will not graft that language into the provision in the context of a Section 503(b)(4) application." Slip op. at 5.

We do not find that reasoning persuasive. The term "entity" is defined by the Bankruptcy Code as a person, estate, trust, governmental unit, and United States trustee. 11 U.S.C. S 101(15). A "person" is defined broadly to include individuals, partnerships, and corporations. 11 U.S.C. S 101(41). Bradford, as a corporation, falls within the broad definition of "entity." In addition, Bradford falls within the definition of a creditor, defined by the Code as an "entity that has a claim against the debtor. . . ." 11 U.S.C. S 101(10) (emphasis added).

The Debtor seeks to avoid the inevitable logic of these definitions by arguing that Bradford does not request reimbursement as a "corporation" or as a "creditor" but as a "member of a committee," which is not specifically defined as an entity in S 101(15). This is the same point made by the Bankruptcy Court. However, S 503 itself plainly provides that a member of a committee is an entity entitled to reimbursement for administrative expenses. Section 503(a) begins with the broad authorization that"[a]n entity may timely file a request for payment of an administrative expense," 11 U.S.C.S 503(a) (emphasis added), and the next subsection proceeds to list all entities entitled to reimbursement, see 11 U.S.C. S 503(b)(3), which specifically includes committee members, see 11 U.S.C.S 503(b)(3)(F).

Although finding an ambiguity in the language would have the advantage of permitting the court to resort to the legislative history, we cannot turn the language upside down and inside out to do so. To say that a member of a creditors committee -- who is, ipso facto, a creditor -- is

7

not an entity under the Code flatly contradicts both the ordinary understanding of the term "entity" and its usage in the Code. We therefore disagree with the Bankruptcy Court's conclusion that the term "entity" or its use in S 503(b)(4) is ambiguous.

The Trustee takes a slightly less jarring position. The Trustee focuses on the phrase "if such expenses are incurred in the performance of the duties of such committee," and contends that the language of S 503(b)(3)(F) supports an alternative interpretation. The Trustee argues that this language limits reimbursement to committee members for expenses incurred in performance of "duties `of ' the committee," and does not permit reimbursement for duties that merely "pertain" or "relate" to the committee. Trustee's Br. at 19. Therefore, the Trustee continues, the duties of the committee must "involve formal committee work . . . , not a member's informal or personal response to its formal committee appointment." Id.

According to the Trustee's interpretation, a member's voluntary consultation with private counsel is not incurred in the performance of the duties of the committee even if it pertains to the work of the committee and inures to its benefit. Presumably, it follows that if a member's personal lawyer successfully negotiated a substantial reduction of a creditor's large claim, that service would not qualify as incurred in the performance of the duties of the committee because that lawyer had not been authorized to represent the committee. However, as interpreted by the Trustee, if the identical service was performed by one of the committee's lawyers it would be considered as incurred in the performance of the duties of such committee.

Although there may be reasons why the work done by the attorney for the creditor should not be reimbursed, we do not think they can be found in the phrase "duties of the committee." The nature of the services does not depend on the identity of the actor; either the service is or is not incurred in the performance of the duties of such committee. For example, a phone call to a creditor to negotiate a reduction in the Debtor's liability is an expense incurred in the performance of the duties of such

8

committee, whether the call was made by a committee member, an aide to that member, or the member's attorney.

We fail to find an ambiguity in S 503(b)(3)(F) or S 503(b)(4) that would overcome the straightforward reading of the provision as permitting committee members to recover attorney's fees for work performed in connection with that entity's service on the committee. There is no principled way to read the language of S 503(b)(4) that allows recovery of attorney's and accountant's fees "of an entity whose expense is allowable under paragraph (3)" to include as "entities" those in subsections (A)-(E) of paragraph (3) but not those in subsection (F).

Our conclusion that the language of S 503 is not ambiguous does not mean that creditors committee members may necessarily receive compensation for their lawyer's fees incurred in relation to their duties as committee members. However, we would have to find reason to exclude such compensation elsewhere.

B.

APPELLEES' ARGUMENTS

1. Tension with S 1103(a) of the Bankruptcy Code

Both the Debtor and Trustee find reason to preclude recovery for the entire category of attorney's fees for committee members in the sharp conflict such an interpretation would create with S 1103(a) of the Bankruptcy Code. Section 1103(a) sets forth the process by which the committee as a whole may employ professionals. It provides that the committee, at a scheduled meeting in which a majority of the members are present and with the court's approval, may "select and authorize the employment . . . of one or more attorneys, accountants, or other agents, to represent or perform services for [the] committee." 11 U.S.C. S 1103(a).

We have previously emphasized the importance of the requirement of prior court approval for the hiring of committee counsel. In Matter of Arkansas Co., Inc., 798 F.2d 645, 649 (3d Cir. 1986), we held that a court may

authorize employment of counsel nunc pro tunc only under extraordinary circumstances, explaining that the requirement of prior court approval "was designed to eliminate the abuses and detrimental practices that had been found to prevail," such as "cronyism" and "attorney control of bankruptcy cases." We stressed that the prior approval requirement ensures "that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same." Id. at 648 (quoting In re Hydrocarbon Chemicals, Inc., 411 F.2d 203 (3d Cir. 1969) (en banc)).

Bradford's plain language interpretation of the statute would allow committee members to retain counsel privately, without prior review by the court and without notice to the committee or other creditors. The only review would come after the fact, when the court is called upon to determine: (1) whether the fees are "reasonable . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title," S 503(b)(4); and (2) if such fees were "incurred in the performance of the duties of such committee," S 503(b)(3)(F). Consequently, the potential for the abuses that S 1103 was designed to eliminate is a real concern. In addition, if every member of a committee were to claim attorney's and accountant's fees, there would be a proliferation of administrative expenses which could unnecessarily drain estate assets.

Accordingly, we cannot lightly dismiss the argument that the plain language reading of S 503(b)(4) leads inescapably to tension with the statutory scheme for retention of professionals by the committee established by S 1103.

2. Legislative History

The Debtor and the Trustee also urge that we examine the legislative history of the 1994 Amendment toS 503 of the Bankruptcy Code, which they contend supports their interpretation that S 503(b)(4) does not authorize committee members to recover attorney's fees as administrative expenses. Assuming arguendo that we are free to resort to that legislative history in the absence of an ambiguity in the

10

statutory language, we conclude that the legislative history does not resolve the issue before us.

In 1993, the Senate passed S.B. 540 which contained a number of substantial changes in the Bankruptcy Code. Included in the bill was a proposal to add S 503(b)(7) as a new provision that would have allowed reimbursement of:

> the actual, necessary expenses incurred by a member of a committee appointed under section 1102 in the performance of duties of the committee (including fees of an attorney or accountant for professional services rendered for the member to the extent allowable under paragraph (4)) other than claims for compensation for services rendered as a member of the committee.

S. Rep. No. 103-168, at 6 (1993) (emphasis added). When the amendments to the Bankruptcy Code finally passed Congress in 1994,[2] it was the House Bill that was passed in lieu of the Senate Bill, and the House Bill did not contain the language emphasized above in proposed S 503(b)(7). There was no explanation from the Senate when it concurred in the House version.

The House Report on the 1994 Amendments suggests that the addition of subsection (F), adding members of creditor and equity holder committees to the list of entities entitled to recover "actual and necessary expenses," was intended only to allow those members reimbursement for their incidental out-of-pocket expenses and was not intended to include compensation for professional services. The House Report states:

> The current Bankruptcy Code is silent regarding whether members of official committees appointed in

_____

2. The Bankruptcy Reform Act of 1994 was the culmination of several years of hearings and testimony on bankruptcy reform before Congressional committees. The amendment at issue,S 110 of H.R. 5116, was one of fifty-three sections intended to effectuate some degree of reform. Other changes of varying significance included provisions to expedite the filing of plans under chapter 11, a limitation on the ability of small investment companies to file for bankruptcy protection, and amendments to provide greater protection for alimony and child support owed by a debtor in bankruptcy.

11

chapter 11 cases are entitled to reimbursement of their out-of-pocket expenses (such as travel and lodging), and the courts have split on the question of allowing reimbursement.

This section of the bill amends section 503(b) of the Bankruptcy Code to specifically permit members of chapter 11 committees to receive court-approved reimbursement of their actual and necessary out-of-pocket expenses. The new provision would not allow the payment of compensation for services rendered by or to committee members.

H.R. Rep. No. 103-835, at 39 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3348 (footnote omitted) (emphasis added). It is the underlined language that the Debtor and Trustee emphasize.

As this case demonstrates, attempting to divine legislative intent on the basis of "Congress's unexplained modification of language in earlier drafts of legislation" can be problematic. Appalachian Power Co. v. E.P.A., 135 F.3d 791, 810 (D.C. Cir. 1998). It may be, as the Debtor argues, that the adoption by Congress of the House version was a deliberate policy decision to reject the language in the earlier Senate version that expressly provided for the recovery of professional fees for committee members. Cf. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 248 (1978) (Powell, J., concurring in part and dissenting in part) ("One must assume that a deliberate policy decision informed Congress' rejection of [earlier considered] alternatives in favor of the language presently contained in [the statute in question]."). However, it is difficult to draw that conclusion in light of our reading of the plain language of the Act, which adopted the House version, to authorize reimbursement for professional fees. We have no conclusive evidence that the Senate adopted the statement in the House Report that the revised Act bars reimbursement of lawyer fees, as neither the Bankruptcy Court nor the parties have any basis to assume the Senate was aware of the one sentence in the House Report upon which the parties rely.

The Debtor urges us to bear in mind that every year following the adoption of the 1994 Bankruptcy Reform Act,

12

there has been an effort in Congress to amend S 503(b)(3)(F) to clarify that "[e]xpenses for attorneys or accountants incurred by individual members of creditors `and equity security holders' committees would not be recoverable, but expenses incurred for such professional services by the committees themselves would be." S. Rep. No. 105-253 at 52 (1998); see also Bankruptcy Technical Corrections Act of 1996, S. 1559, 104th Cong. S 7 (1996), reprinted in 142 Cong. Rec. 21787 (1996); Bankruptcy Amendments of 1997 Act, H.R. 764, 105th Cong. S 13 (1997), reprinted in H.R. Rep. No. 105-324 (1997); Consumer Bankruptcy Reform Act of 1998, S. 1301, 105th Cong. S 411, reprinted in S. Rep. No. 105-253 (1998); Bankruptcy Reform Act of 1999, H.R. 833, 106th Cong. S 1110 (1999); Bankruptcy Reform Act of 1999, S. 625, 106th Cong. S 1109 (1999) (currently pending before the Senate).

But, as the Trustee conceded at oral argument, subsequent legislative history, particularly when the proposals do not become law, "is a `hazardous basis for inferring the intent of an earlier' Congress." Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 650 (1990) (citing United States v. Price, 361 U.S. 304, 313 (1960)); see also United States v. United Mine Workers of America, 330 U.S. 258, 282 (1947) ("We fail to see how the remarks of these Senators in 1943 can serve to change the legislative intent of the Congress expressed in 1932 . . . ."). These subsequent failed attempts by Congress lack "persuasive significance" because we can draw numerous equally reasonable inferences therefrom. See LTV, 496 U.S. at 650. While the immediate and continuous attempts in Congress to specify that there may be no reimbursement of attorney's fees for committee members may show that the 1994 Congress failed to realize the effect of its addition of S 503(b)(3)(F), it is equally plausible that the unsuccessful attempts in subsequent Congresses reflect satisfaction with the plain language of the provision. Accordingly, we can give no conclusive weight to the subsequent legislative history as evidence of the intent of Congress in 1994.

III.

As the foregoing makes clear, the plain language of the statute arguably is in conflict with the intent of Congress as

13

reflected in the House Report but definitely conflicts with the requirement of S 1103 that the bankruptcy courts must approve the selection of lawyers to represent the committee. This, the appellees contend, is adequate reason for us to disregard the plain language and instead effectuate Congress's intent.

However, Supreme Court cases declaring that clear language cannot be overcome by contrary legislative history are legion. See, e.g., United States v. Gonzales, 520 U.S. 1, 8 (1997) ("We . . . follow the text, rather than the legislative history [of the statute]."); Toibb v. Radloff, 501 U.S. 157, 162 (1991) ("[T]his Court has repeated with some frequency: `Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.' ") (citing Blum v. Stenson, 465 U.S. 886, 896 (1984)); Garcia v. United States, 469 U.S. 70, 76 n.3 (1984) ("Resort to legislative history is only justified where the face of the [statute] is inescapably ambiguous. . ..") (quoting Schwegmann Brothers v. Calvert Distillers Corp., 341 U.S. 384, 395 (1951) (Jackson, J., concurring)); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, `the sole function of the courts is to enforce it according to its terms'.") (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

Admittedly, the Court has made an exception for "rare cases" in which "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982). In such situations, "those intentions must be controlling." Id.; see also Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 455 (1989) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is `rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' ") (quoting Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 48 (1928)). Moreover, we are

14

enjoined to interpret statutes in light of the context of the statutory scheme. See, e.g., Richards v. United States, 369 U.S. 1, 10 (1962) ("[A] section of a statute should not be read in isolation from the context of the whole Act."). Statutory interpretations "which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." Griffin, 458 U.S. at 575 (1982).

But only absurd results and "the most extraordinary showing of contrary intentions" justify a limitation on the "plain meaning" of the statutory language. Garcia, 469 U.S. at 75. As we discussed earlier, the legislative history is far from clear.

In addition, although the Debtor and Trustee adduce many reasons why it might be incongruous or unwise to allow claims for reimbursement for services of professionals retained by members of a committee, there has been no showing that the result apparently commanded by the plain language of the statute is truly "absurd." In Chapter 11 proceedings, a creditors committee has an active role in the reorganization, as it helps develop a plan of reorganization and ultimately decides whether to accept or reject a Chapter 11 plan. The creditors committee also monitors the conduct of the debtor to ensure its compliance with the Bankruptcy Code and advises the creditors of their rights. See 11 U.S.C. S 1103(c); Pension Benefit Guaranty Corp. v. Pincus, Verlin, Hahn, Reich & Goldstein Prof. Corp., 42 B.R. 960, 963 (Bankr. D.C. 1984). Responsible fulfillment of these duties may entail a substantial amount of work by committee members which is of value to the committee as a whole and may require services by a creditor's counsel.

Further, it is not at all clear that the allowance of professional fees to committee members is necessarily an invitation to chaos in the functioning of committees or will cause the wholesale depletion of bankruptcy estates. The bankruptcy court retains the power to ensure that only those fees that are demonstrably incurred in the performance of the duties of the committee, the statutory standard, are reimbursed. Moreover, in its review of each application to determine whether the fee requested is reasonable, as required by the statute, the bankruptcy

15

court must necessarily determine whether the services were necessary. This review is committed to the sound discretion of the bankruptcy courts. See Matter of DP Partners Ltd. Partnership, 106 F.3d 667, 674 (5th Cir. 1997). Thus, many of the concerns expressed by the Trustee can be accommodated within the plain language interpretation of the statute, and the ruling of the Bankruptcy Court on remand will set the tone for future applications, even if Congress fails to amend the statute once more to make clear its intent, the result we believe would be preferable.3

Although we acknowledge that the plain language of S 503(b)(4) presents serious tension with the scheme for retention of professionals by the committee as a whole created by S 1103, it is insufficient reason to justify failure to follow the unambiguous directive contained in the language of S 503. Accordingly, we leave any redrafting of the statute in Congress' hands.

IV.

For the foregoing reasons, we will reverse the Bankruptcy Court's decision and remand for proceedings consistent with this opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

3. As of this writing, Congress has not yet passed a pending bill that would resolve the issue before us.

16