**In re WORLDWIDE DIRECT, INC., et al., Debtors.**

**Nos. 99–108 (MFW) to 99–127 (MFW).**

United States Bankruptcy Court, D. Delaware.

Feb. 14, 2001.

Robert S. Brady, Edwin J. Harron, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Bruce Bennett, James O. Johnston, Hennigan Mercer & Bennett, Los Angeles, CA, for Debtors.

Norman Pernick, Mark Minuti, Saul Ewing Remick & Saul LLP, Wilmington, DE, Brian D. Spector, Spector & Ehrenworth, P.C., Florham Park, NJ, for Philips Consumer Communications.

Steven K. Kortanek, Klehr Harrison Harvey Branzburg & Ellers LLP, Wilmington, DE, Joseph J. Wielebinski, Joseph E. Marshall, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for Official Committee of Unsecured Creditors.

Daniel K. Astin, Maria D. Giannarakis, Office of United States Trustee, Philadelphia, PA.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Application of Philips Consumer Communications ("Philips") for Reimbursement and Payment of its Attorney's Fees and Disbursement Expenses Incurred as a Member of the Official Unsecured Creditors' Committee ("the Application") and the Objections thereto filed by the Debtors and the Office of the United States Trustee ("the UST").[2] After consideration of the pleadings, we deny the Application because we conclude that Philips has not established that the services rendered were necessary to the performance of the duties of Philips as a member of the Official Unsecured Creditors' Committee ("the Committee"). However, we will allow Philips to supplement the Application and/or request an evidentiary hearing.

## I. JURISDICTION

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(A).

## II. BACKGROUND

Worldwide Direct, Inc., and its affiliates (collectively "the Debtors") filed voluntary petitions under chapter 11 on January 19, 1999. On February 2, 1999, the UST conducted the Committee formation meeting at which time it appointed Philips as one of the seven members of the Committee. Philips chose to be represented on the Committee by its outside counsel, Spector and Ehrenworth, P.C., who served in that capacity for approximately five months.[3] Philips now seeks reimbursement of its legal fees and expenses pursuant to section 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

## III. DISCUSSION

Section 503(b) provides for allowance as an administrative claim:

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by -

. . . . .

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b).

This case presents the issue of whether section 503(b) permits the reimbursement by the debtor's estate of attorney fees and expenses incurred by a member of the committee. The Third Circuit recently addressed this issue in *First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394 (3d Cir.1999).

In *First Merchants*, it was argued that Congress did not intend the allowance and payment of counsel fees incurred by mem-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

2. At the hearing, Philips asserts that the UST's objection should not be considered be-

cause it was not timely served upon Philips or its counsel. However, Philips concedes that it received a copy of that objection from counsel for the Debtors before the hearing. Therefore, we permitted the UST to be heard at the hearing and considered its objections.

3. During that time, the Debtors sold substantially all their assets to AT & T.

bers of the committee. The Third Circuit disagreed, concluding that "a straightforward reading" of section 503(b)(4) permits reimbursement of committee members' legal fees and expenses. *Id.* at 398. However, the Third Circuit acknowledged the potential for abuse because counsel for an individual member of the committee is not subject to prior approval of the Court and may have conflicts of interest. *Id.* at 400. Further, the Third Circuit acknowledged that "if every member of a committee were to claim attorney's and accountant's fees, there would be a proliferation of administrative expenses which could unnecessarily drain estate assets." *Id.*

■ In the absence of a change to the statute, however, the Third Circuit left the task to the bankruptcy courts to prevent such abuses, concluding that:

> The bankruptcy court retains the power to ensure that only those fees that are demonstrably incurred in the performance of the duties of the committee ... are reimbursed. Moreover, in its review of each application to determine whether the fee requested is reasonable, as required by the statute, the bankruptcy court must necessarily determine whether the services were necessary. This review is committed to the sound discretion of the bankruptcy courts.

*Id.* at 403. *See also In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 844 (3d Cir.1994) ("the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors").

■ The burden of proving that the fees and expenses sought are reasonable and necessary is on the applicant. *See, e.g., Zolfo Cooper & Co. v. Sunbeam–Oster Co., Inc.,* 50 F.3d 253, 260 (3d Cir.1995).

### A. *Necessary Services*

Section 1103(c) enumerates some of the activities which committees may perform:

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determination as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

(5) perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c). In *First Merchants,* the Third Circuit enumerated other examples of duties of the committee, including calling creditors to negotiate the reduction of their claims and advising creditors of their rights. 198 F.3d at 399, 403.

Philips argues that all of the services performed by its counsel for which reimbursement is sought were activities properly performed by committees and their members. None of the services were for Philips' benefit, in its individual capacity, such as filing a proof of claim. The services delineated in the application are encompassed within the broad duties articulated by section 1103. Therefore, Philips argues, the services were necessary and are compensable.

■ The Debtors and UST argue that the standard of what are necessary services is different when performed by a committee member as opposed to counsel for the committee. They argue that not all duties which are necessary for counsel to perform are compensable when performed by a committee member. We agree with the Debtors and UST that the analysis is somewhat different when ser-

vices are performed by a committee member.

■ In determining whether a committee member's legal fees are reimbursable, it is not enough simply to determine what services are necessary; we must also determine whether it was necessary for a particular member of the committee to perform them. For example, we would not permit every member of a committee to negotiate separately with the debtor over the terms of the plan of reorganization because that would be impermissible duplication of effort. *See, e.g., Zolfo, Cooper,* 50 F.3d at 260 (fees charged by financial consultant to debtor cut because of duplication of effort); *Busy Beaver,* 19 F.3d at 856 (attorneys for debtor obligated to exercise same billing judgment as non-bankruptcy attorneys and to write off unproductive or duplicative services).

■ Further, our determination of what is necessary is tempered by the fact that a committee is authorized to retain counsel, accountants, financial advisors and other professionals to assist the committee in performing its duties. 11 U.S.C. § 1103(a). In large cases, committee advisors are typically retained and usually well-qualified to assist the committee in the performance of all of its duties. In such a case, it is difficult to justify allowing a committee member to hire its own legal counsel (or accountant or financial advisor) to perform duties which are also performed by committee professionals. To allow such expenses would permit unnecessary duplication of effort.

■ However, we are aware of circumstances that might justify the performance of committee tasks by a professional retained by an individual member. Such unusual circumstances might include a case where, because of time constraints or the sheer volume of work, the committee asked an individual member's counsel to perform a specific task. Where there is such a conscious and restricted division of labor, it would not result in an inappropri-ate duplication of effort and the fees incurred by counsel for the member would be a necessary expense of the committee.

■ Similarly, where counsel for a member has a special expertise or has been involved in a matter pre-petition and, therefore, has specialized knowledge that would assist the committee in handling a particular discreet matter, it would be appropriate for the committee in the performance of its duties to ask the member's counsel to perform work on that particular matter. Such a practice would avoid the administrative expense and delay of bringing a new attorney into a matter midstream. *See, e.g., In re Jefsaba,* 172 B.R. 786, 801 (Bankr.E.D.Pa.1994) (finding that the estate should not bear the cost of the learning curve of each new addition to a firm). The committee, in the first instance, should be diligent in assuring that there is no duplication of effort.

In the absence of unusual circumstances, it would be difficult to conclude that it is necessary for committee members to hire individual counsel to assist them in the performance of their duties as committee members. The application filed by Philips illustrates this point.

1. *Pre–Formation Fees and Expenses*

Philips seeks reimbursement of $1,272 for legal fees and $86.34 for expenses incurred before the Committee was even formed.

■ Prior to formation of an official committee, there is no authority for the committee or its members to act and no duties to perform. Thus, it is hard to conclude that any actions which committee members undertake before the committee is actually formed are necessary for the fulfillment of their duties as committee members. Therefore, we conclude that such expenses are not reimbursable under section 503(b)(4).

■ It is of course possible for an individual creditor to be reimbursed under

section 503(b)(3)(D) for services performed by it or its attorney prior to the formation of an official committee, to the extent that those services provide a substantial contribution to the estate. (An example is a creditor who appears and raises issues protective of unsecured creditors' rights at a hearing on interim financing before the committee formation meeting can be held.) However, there is no evidence that the services rendered by Philips' counsel prior to the formation of the Committee provided a substantial contribution to the estate, nor does Philips seek reimbursement under section 503(b)(3)(D).

### 2. *Attendance at Committee Meetings*

██ Some of the services for which reimbursement is sought consist of Philips' counsel attending Committee meetings or participating in Committee telephone conferences and then relaying to Philips what was discussed at those meetings. Such a procedure is not necessary for the committee member to perform its duties. This procedure duplicates the work performed. By having counsel attend the meeting, it is necessary for counsel to then advise the member of the results of the meeting. If the committee member personally attended the meeting, it would not be necessary for anyone to report what happened at the meeting.

Usually a committee member participates in committee meetings itself. This not only avoids the unnecessary task of reporting back to the committee member but has direct salutary effects. Having committee members participate in person is desirable because they can lend their business expertise and their unique knowledge of the debtor's industry and business to the process. If Congress had not thought that participation by businessmen on the committee was necessary, it could have authorized the appointment of an attorney to represent creditor interests, without requiring that creditors be selected and serve on the committee. If we were to allow committee members to participate on committees solely through their counsel, the benefits of the business and industry expertise of the members would be lost. This does not assist the reorganization process. Therefore, we conclude that normally it is necessary for a committee member, not its counsel, to attend committee meetings. Of course, there may be unusual circumstances where it is necessary for counsel for a member to attend. However, there is no indication from the Application before us that special circumstances justified the attendance by counsel at any of the meetings.

It may be argued that counsel for a member needs to attend meetings with, or instead of, the committee member to explain legal matters to the member. However this is not necessary because that function is served by committee counsel who lends its expertise in bankruptcy and other legal matters. Therefore, to the extent a committee member needs an explanation of the legal process, it can obtain it from counsel for the committee.[4] Thus, we conclude that attendance at a committee meeting by counsel for a member, in the absence of special circumstances, appears to be merely for the convenience of the member. It is not necessary for the functioning of the committee and is not compensable.

### 3. *Review of Pleadings*

██ The vast majority of the legal services for which compensation is requested consists of Philips' counsel reviewing pleadings or correspondence from the Debtors or Committee and then explaining them to in-house counsel for Philips. We do not find this to be necessary for Philips to fulfill its duties as a Committee member. To the extent Philips needed an explanation of the pleadings or correspon-

---

4. To the extent that a committee member seeks legal advice with respect to its own particular claim or circumstances in the case, that is not a function of the committee and is not compensable from the estate.

dence, it was able to obtain that from Committee counsel. In fact, as noted, if Philips had regularly attended the Committee meetings, it would have had more familiarity with the case and less questions or, at least, the opportunity to have its questions answered at those meetings. Further, there is no evidence that Committee counsel was not available to answer Philips' questions. Therefore, we do not find it necessary for the proper functioning of the Committee for counsel for Philips to review the pleadings and explain them to its client.

Further, it is not clear that the services for which reimbursement is sought are for review and explanation of only those pleadings which Philips found incomprehensible. Rather, it appears that Philips relied on its counsel to review all pleadings and to advise it as to their meaning. Such a review is a necessary obligation of a committee member. Having counsel undertake that task, instead of the committee member, causes unnecessary duplication of effort because it requires that the attorney take the extra step of explaining the content of the pleadings to his client. That extra step is clearly not necessary if the member reviews the pleadings itself.

We make this finding specifically in the context of this case. This was not a complicated case; it involved essentially the sale of all assets of the Debtors in the first four months of the case. While the Debtors' business may be complicated, the bankruptcy sale process and the issues addressed by the Committee during the five months that Philips served on the Committee were not. In the absence of evidence that advice from counsel was necessary to fulfill its role as a member of the Committee, we cannot allow reimbursement for the services.

### B. Reimbursement of Expenses

Philips seeks reimbursement of the expenses incurred by its counsel in the amount of $2,215.04. These expenses consist of the cost of telephone calls, faxes, photocopies, mailings and computer assisted research.

As we noted in Part A(1) above, expenses incurred by a committee member prior to the formation of the committee are not reimbursable. Additionally, Philips has not explained why it was necessary for its counsel (as opposed to Committee counsel) to incur $497.53 of expenses for computer assisted research.

With respect to the other expenses incurred by Philips' counsel, however, we will allow them to the extent that the services performed by counsel were necessary. For example, if after further submission we determine that it was necessary for Philips in the performance of its duties as a Committee member to consult with its own counsel, we would allow the cost of the phone call as well as the hourly rate of the attorney for the time of that call.

Travel expenses for committee members to attend committee meetings or court hearings are necessary for the functioning of the committee and are normally reimbursable. Therefore, we will allow reimbursement for travel expenses, to the extent that the cost was not more than would have been incurred if Philips, instead of its counsel, made the trip to the Committee meeting or hearing.

### C. Supplemental Application

We recognize that the *First Merchants* decision is relatively recent and that there is scant decisional law from the bankruptcy courts explaining how they will determine whether legal fees sought by a committee member are reasonable and necessary. We are also mindful of our obligation to give counsel notice of any questions we have with respect to fee requests before final disallowance. *See, e.g., Busy Beaver,* 19 F.3d at 845–46. Therefore, we will allow Philips to supplement its application and/or, if it requests, to

present evidence in support of its application.

## IV.  CONCLUSION

For the foregoing reasons, Philips' Application for reimbursement of legal fees and expenses will not be allowed in the absence of further supplementation sufficient to establish that the performance of the services by counsel was necessary for Philips to perform its duty as a member of the Committee.