

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2000

# The Pitt News v. Fisher

Precedential or Non-Precedential:

Docket 99-3545

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"The Pitt News v. Fisher" (2000). *2000 Decisions.* Paper 119.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/119

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 6, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3545

THE PITT NEWS,
       Appellant

v.

D. MICHAEL FISHER, in his capacity as Attorney General
of the Commonwealth of Pennsylvania; MAJOR FRANCIS
KOSCELNAK, in his capacity as Director, Bureau of
Liquor Control Enforcement, Pennsylvania State Police;
JOHN E. JONES, III, in his capacity as Chairman,
Pennsylvania Liquor Control Board

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 99-cv-529)
District Judge: The Honorable William L. Standish

ARGUED FEBRUARY 1, 2000

BEFORE: MANSMANN, NYGAARD, and RENDELL,
Circuit Judges.

(Filed June 6, 2000)

Michael L. Rosenfield, Esq.
1808 Law & Finance Building
Pittsburgh, PA 15219

Witold J. Walczak, Esq. (Argued)
American Civil Liberties Union
313 Atwood Street
Pittsburgh, PA 15213

 Attorneys for Appellant

J. Bart DeLone, Esq. (Argued)
15th Floor
Office of Attorney General of
 Pennsylvania
Strawberry Square
Harrisburg, PA 17120

Charles B. Schweitzer
Office of Attorney General
 of Pennsylvania
564 Forbes Avenue
Manor Complex
Pittsburgh, PA 15219

 Attorneys for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

I. INTRODUCTION

Appellant, The Pitt News, is a student-run newspaper at
the University of Pittsburgh. It sought to enjoin the
enforcement of a 1996 amendment to the Commonwealth of
Pennsylvania's Liquor Code, codified at 47 P.S.S4-498(e)(5)
and known as "Act 199." This amendment provides
criminal sanctions against businesses that advertise
alcoholic beverages in newspapers and other materials
"published by, for or in behalf of any educational
institution." Id. The Pitt News  sought declaratory and
preliminary injunctive relief pursuant to 42 U.S.C.S 1983,
arguing that Act 199 violates the First Amendment.

2

The District Court denied the motion for a preliminary injunction, holding that The Pitt News lacked standing to bring this challenge because only advertisers, and not the newspaper itself, are subject to prosecution under Act 199. Because the District Court reasoned that The Pitt News felt only indirect economic effects resulting from a regulation aimed at third parties, it held that the newspaper did not suffer an injury to its own constitutionally protected interests, and therefore was not a proper party to bring this challenge.[1] The Pitt News appeals, arguing that its own First Amendment rights have been infringed by Act 199, which has had the effect of reducing its advertising revenue, and thereby the length of its publication. The Pitt News also claims that it may assert the constitutional rights of its former advertisers and its adult readers, neither of whom are parties to this litigation.

We hold that The Pitt News does have standing to argue that Act 199 infringes upon its own First Amendment rights. However, The Pitt News lacks standing to challenge Act 199 on behalf of these third parties. We will therefore proceed to the merits of the preliminary injunction only on the question of whether the economic effect felt by The Pitt News amounts to a violation of its own First Amendment rights. We hold that it does not, and will affirm.

II. JURISDICTION

The District Court exercised jurisdiction over this matter pursuant to 28 U.S.C. SS 1331, 1343, and 2201. We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1292(a)(1).

III. FACTS and PROCEEDINGS

The Pitt News is a student-run newspaper, published under the supervision of the University of Pittsburgh.

_____

1. The District Court also reasoned, in the alternative, that even if The Pitt News had standing to pursue the preliminary injunction, it had failed to establish that the enforcement of Act 199 had caused the newspaper irreparable injury, as would be required for preliminary injunctive relief. See Dist. Ct. Op. at 22,P. 30.

3

Students have full editorial control over the content of the newspaper, and it is entirely supported by advertising revenue. It is distributed free of charge in racks at 75 locations around the school campus. It is read by University of Pittsburgh students and faculty, as well as by members of the public at large. Approximately 75% of its readers are 21 years of age or older.

In 1996, the Commonwealth of Pennsylvania enacted the challenged amendments to the Pennsylvania Liquor Code known as Act 199, codified at 47 P.S. S4-498(e)(5). Act 199 provides that:

> (e) The following shall apply to all alcoholic bev erage and malt beverage advertising:
>
> (5) No advertisement shall be permitted, either directly or indirectly, in any booklet, program book, yearbook, magazine, newspaper, periodical, brochure, circular or other similar publication published by, for or in behalf of any educational institution.
>
> (g) For purposes of this subsection, the term "advertisement" shall mean any advertising of alcoholic beverages through the medium of radio broadcast, television broadcast, newspapers, periodicals or other publication, outdoor advertisement or any other printed or graphic matter, including booklets, flyers or cards, or on the product label or attachment itself.

47 P.S. S 4-498 (1996) (emphasis added).

Violation of Act 199 is a misdemeanor. Violators may receive a fine of between $100 and $500 for afirst offense, or imprisonment for up to three months. A second offense carries a mandatory minimum sentence of three months in jail. Although there is no legislative history explaining the purpose of Act 199, the Commonwealth asserts that it was designed to address problems of underage drinking on campus, as well as binge drinking on campus by both adults and minors.

Violations of Act 199 are investigated, and arrests are made, by the Bureau of Liquor Control Enforcement

4

("BLCE") of the Pennsylvania State Police. However, the Pennsylvania Liquor Control Board ("LCB") issues interpretations of state liquor laws that are binding on the BLCE. The LCB has ruled that Act 199 can only be enforced against liquor licensees or manufacturers. Thus, a bar or restaurant that advertises drink specials or other information pertaining to alcoholic beverages in The Pitt News could be subject to criminal sanctions, but The Pitt News or its staff could never be prosecuted.

In December of 1997, a restaurant called the "Fuel & Fuddle," which placed alcohol-related advertisements in The Pitt News, was cited for violation of Act 199. This in turn led it to cancel its contract with The Pitt News . It is uncontested that this prosecution led other advertisers to cancel their contracts as well, resulting in a direct loss to The Pitt News of more than $17,000 in advertising revenue.2

Because The Pitt News follows a "50/50" format, whereby it must run equal proportions of advertising and text, this reduction in advertising caused The Pitt News to shorten its newspaper, thereby losing space in which to print student articles and photographs. Additionally, the loss of revenue threatens the newspaper's ability to purchase new equipment and make renovations to its facilities, and has placed it in a competitive disadvantage in the marketplace.

The Pitt News sued the defendant appellees, who are D. Michael Fisher, the Pennsylvania Attorney General; Major Francis Koscelnak, the Director of the BCLE; and John E. Jones, III, the Chairman of the LCB. The Pitt News sought declaratory and injunctive relief under 42 U.S.C.S 1983, alleging that enforcement of Act 199 violates its rights and/or those of its advertisers and adult readers under the First Amendment. The District Court held a hearing on the motion for a preliminary injunction, and ruled that The Pitt News did not have sufficient standing to bring this suit. The District Court reasoned that The Pitt News could not make out a violation of its own First Amendment rights:

    The harm that [The Pitt News] has suffered, and may
_____

2. This amount does not include potential lost revenue from new business.

suffer in the future, has been, and will be, economic, and the harm has not affected, and will not affect, the rights of The Pitt News to freedom of speech or of the press. Because the injury suffered, or to be suffered, by The Pitt News arising from the enforcement of Section 4-498(e)(5) of Act 199 is not, and will not be, a concrete and particularized invasion of a legally protected interest of The Pitt News, but, rather, an indirect economic injury, The Pitt News has failed to establish its standing to assert its request for a preliminary injunction.

Dist. Ct. Op. at 21-22, P 29.

IV. DISCUSSION

Standing consists of both a "case or controversy" requirement stemming from Article III, Section 2 of the Constitution, and a subconstitutional "prudential" element. To demonstrate Article III standing, plaintiffs must demonstrate that they have suffered an injury-in-fact, that the injury is causally connected and traceable to an action of the defendant, and that it is redressable. See Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 152-53 (3d Cir. 1999). Even when this constitutional minimum has been met, judicially created prudential limitations may defeat a party's standing to maintain a suit. See Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers , 141 F.3d 71, 75 (3d Cir. 1998).

As discussed infra, we conclude that The Pitt News has demonstrated Article III standing to bring this suit on its own behalf. However, prudential limitations prevent it from asserting the constitutional rights of its former advertisers or current adult readers, who are not parties to this case.

A. Article III Standing

1. Injury in Fact

To have Article III standing, The Pitt News must first demonstrate that it has suffered an injury-in-fact. This

6

injury must be concrete and particularized,[3] and actual or imminent, as opposed to conjectural or hypothetical. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). "[T]he injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560–61 and n.1, 112 S. Ct. at 2136 and n.1.

The Pitt News has demonstrated a personal stake in the outcome of this litigation. It has lost approximately $17,000 in advertising revenue as a result of the enforcement of Act 199 against one of its advertisers. The Pitt News claims that this amounts to a violation of its First Amendment rights. As discussed in sub-section C, infra, we disagree that The Pitt News' First Amendment rights have been violated. However, our determination of the likelihood of success on the merits of the case is a separate inquiry from the threshold issue of Article III standing. To demonstrate its standing to sue, a plaintiff must only allege that they have suffered sufficient injury to comply with Article III's "case or controversy" requirement. See Department of Commerce v. United States House of Representatives, 525 U.S. 316, 329–30, 119 S. Ct. 765, 772–73, 142 L. Ed. 2d 797 (1999); Secretary of State of Maryland v. Joseph Munson Co., Inc., 467 U.S. 947, 958–59, 104 S. Ct. 2839, 2848, 81 L. Ed. 2d 947 (1984) (question of whether challenged statute was substantially overbroad was question better left for merits, not resolved as part of standing inquiry). The threshold standing inquiry is analogous in this regard to the threshold question of Article III subject matter jurisdiction, where the failure to state a claim upon which relief can be granted does not mean that federal question jurisdiction is lacking. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010, 140 L. Ed. 2d 210 (1998);

_____

3. This Article III injury requirement is related to the prudential rule, discussed infra, that litigants should not assert the rights of third parties
unless they have a "sufficiently concrete interest in the outcome of [the] suit to make it a case or controversy." Singleton v. Wulff, 428 U.S. 106, 112 96 S. Ct. 2868, 2873, 49 L. Ed. 2d 826 (1976). These two requirements are thus "not completely severable." Secretary of State of Maryland v. Joseph Munson Co., Inc., 467 U.S. 947, 955–56 n.5, 104 S. Ct. 2839, 2846 n.5, 81 L. Ed. 2d 947 (1984).

Bell v. Hood, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946). The Pitt News has alleged a sufficiently personal injury to satisfy the "injury in fact" requirement of Article III standing.

2. Traceability

Next, to determine whether The Pitt News has Article III standing we must ascertain whether the alleged injury-in-fact is causally connected and traceable to an action of the defendants. See Doe v. National Bd. of Med. Exam'rs, 199 F.3d 146, 152-53 (3d Cir. 1999). One could argue that the injury alleged by The Pitt News is not fairly traceable to the enforcement of Act 199, because the harm felt by the newspaper results from the independent acts of third parties. The Pitt News has lost revenue because its advertisers decided to stop paying to place advertisements in the newspaper. Therefore, arguably, any harm to The Pitt News was caused by the independent action of these third-party advertisers, and did not result from the enforcement of Act 199 itself.

We reject this argument, and conclude that the injury alleged by The Pitt News is fairly traceable to the enforcement of Act 199. To analogize this situation to a familiar example in tort law, the enforcement of Act 199 was the cause-in-fact of the financial impact felt by The Pitt News. `But for' this enforcement, its advertisers would not have canceled their contracts. See Murray v. Fairbanks Morse, 610 F.2d 149, 160 (3d Cir. 1979) (distinguishing between causation-in-fact and proximate cause based on foreseeability and intervening acts). This result was not only reasonably foreseeable when the Commonwealth decided to enact and enforce Act 199, see id. , it was the very goal of the statute.

Bennett v. Spear, 520 U.S. 154, 169, 117 S. Ct. 1154, 1164, 137 L. Ed. 2d 281 (1997), supports the conclusion that The Pitt News' alleged injury meets the traceability prong of the standing inquiry. In Bennett, the plaintiff sued one government agency, `Agency A,' which had coerced a second agency, `Agency B,' into enacting certain regulations that injured the plaintiff. The Court held that the plaintiff

8

had standing to sue `Agency A,' even though it did not actually enact the regulations at issue. The rationale was that the plaintiff's injuries were directly traceable to the actions of `Agency A,' because `Agency B' would not have enacted the challenged regulation `but for' the actions of `Agency A.' Following this logic, The Pitt News' alleged injury is, for standing purposes, also fairly traceable to the acts of the defendant-appellees.4

## 3. Redressability

Finally, the plaintiff only has Article III standing if "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc., ___ U.S. ___, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000). On these facts, it is not "merely speculative" that The Pitt News will see a dramatic increase in its advertising revenues if Act 199 is struck down as unconstitutional. Enforcement of Act 199 clearly led The Pitt News' advertisers to cancel their contracts with the student newspaper. Although these advertisers have since utilized other methods for distributing their message to their target audience, we may assume based on the past revenues generated by The Pitt News and the sudden drop-off in those revenues after the enforcement of Act 199 against one of its advertisers, that its past advertisers and/or new businesses are likely to continue to advertise alcoholic beverages in The Pitt News if it becomes legal for them to do so.

The Pitt News therefore has Article III standing to bring its claim, at least to the extent that its own rights are
_____

4. Of course our conclusion regarding traceability in the standing context is not the same as a determination that the alleged injury flows from an actual violation of The Pitt News' First Amendment rights. A party may demonstrate standing to litigate a claim even if they fail to make out a constitutional violation on the merits. There is thus no inconsistency between our holding that the injury to The Pitt News was fairly traceable to the enactment and enforcement of Act 199 for standing purposes, and our discussion, infra, holding that The Pitt News suffered only an indirect injury that did not amount to a violation of its First Amendment rights on the merits.

9

concerned, because it has made sufficient allegations that it suffered an injury-in-fact that is fairly traceable to the actions of the defendant-appellees, and that is likely to be redressable by an action of this Court.

B. Prudential Standing

We turn now to the prudential factors that affect The Pitt News' ability to raise the rights of third parties. In addition to asserting its own rights, The Pitt News also attempts to argue that enforcement of Act 199 violates the First Amendment rights of its former advertisers, who are subject to the provisions of the statute, as well as those of its adult readers.5 However, the federal courts adhere to a prudential rule that "[o]rdinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." Singleton v. Wulff, 428 U.S. 106, 114, 96 S. Ct. 2868, 2874, 49 L. Ed. 2d 826 (1976) (quoting Barrows v. Jackson, 346 U.S. 249, 255, 73 S. Ct. 1031, 1034, 97 L. Ed. 1586 (1953)). We apply this prudential rule against third party standing6 even when the requirements of Article III have been met, to "avoid deciding questions of broad social import . . . [and] to limit access to the federal courts to those litigants best suited to assert a particular claim." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100, 99 S. Ct. 1601, 1608, 60 L. Ed. 2d 66 (1979).

There is, however, a narrow exception to the prohibition on third party standing, provided three criteria are satisfied. First, the plaintiff must have suffered an actual injury, although not necessarily one to its own legally protected interests. See Powers v. Ohio, 499 U.S. 400, 411,

_____

5. Although it can be difficult to draw a distinction between the two, the First Amendment rights of both speakers and listeners can be implicated by government regulation. See, e.g., Reno v. American Civil Liberties Union, 521 U.S. 844, 874-75, 117 S. Ct. 2329, 2346, 138 L. Ed. 2d 874 (1997) (Government's legitimate interest in protecting children "does not justify an unnecessarily broad suppression of speech addressed to adults.").

6. This prudential rule is also referred to as the rule against bringing jus
tertii claims. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804, 105
S. Ct. 2965, 2970, 86 L. Ed. 2d 628 (1985).

10

111 S. Ct. 1364, 1370–71, 113 L. Ed. 2d 411 (1991). Second, the plaintiff must have a close enough relationship with the party whose rights he or she is asserting,"thus giving him or her a `sufficiently concrete interest' in the outcome of the issue in dispute" and ensuring that the plaintiff will be an effective advocate. Id. Third, "there must exist some hindrance to the third party's ability to protect his or her own interests." Id. Thus, a plaintiff who meets all these criteria, but who would otherwise lack Article III standing to sue because his or her own legally protected rights were not injured, may assert the rights of a third party.7 The impact felt by such a plaintiff, combined with the nexus between the plaintiff's injury and the rights of the third party, are sufficient to satisfy both Article III's constitutional requirements and judicially-created prudential concerns.

Although The Pitt News has not suffered an injury to its own constitutionally protected interests, it has nonetheless sustained a sufficient injury-in-fact, as a result of its lost advertising revenue, to satisfy the exception'sfirst criterion. It also has a sufficiently close relationship with the third party advertisers to satisfy the exception's second criterion, because of the contractual relationship that existed between them.8 The problem with The Pitt News' attempt to

_____

7. See, e.g., Craig v. Boren , 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (beer vendor given standing to challenge statute that prevented males between the age of 18 and 21 from buying beer, after an original plaintiff in case turned 21 –– it would presumably be difficult for any plaintiff to litigate up to the Supreme Court within the three years before his case became moot); Singleton v. Wulff, 428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (doctor could challenge regulation on abortion on behalf of pregnant women when his fees were at stake –– it would be virtually impossible for any pregnant woman to litigate her case to the Supreme Court before it became moot); NAACP v. Alabama, 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958) (NAACP can assert right to privacy of its members to avoid necessity of their appearing in court, and therefore losing the right they were trying to assert); Barrows v. Jackson, 346 U.S. 249, 73 S. Ct. 1031, 97 L. Ed. 1586 (1953) (allowing white property owner to challenge racially restrictive covenant on land because African-American attempting to buy land from him would not have standing to make such a challenge).

8. We will assume that The Pitt News also has a sufficiently close connection with its readers to satisfy this criterion as well. Because we conclude that The Pitt News may not assert third party standing in this case, we need not decide this question.

11

assert the rights of third parties lies with the final criterion. The Pitt News has not demonstrated that the advertisers actually subject to Act 199, or its adult readers, have any impediment to bringing their own suit to challenge the statute. In most cases, we would therefore conclude at this point that the plaintiff could not assert third party standing. However, we must consider whether the assertion of First Amendment rights in this case requires us to relax this third criterion.

The Pitt News raises Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board, 502 U.S. 105, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991) to support its argument that First Amendment challenges are not subject to the jus tertii prudential rule. In Simon & Schuster, a book publisher challenged a statute affecting profits from books written by perpetrators about their crimes. Publishers were required by the statute at issue to place the author's share of profits from these books into escrow. The escrow fund was then used to pay off perpetrators' civil liability to their victims. The Pitt News argues that because the publisher in that case had standing to sue, it should as well. However, the Supreme Court avoided addressing the standing issue in Simon & Schuster, noting that whether the proper litigant was the publisher or the author, the results would be the same. See Simon & Schuster, Inc., 502 U.S. at 116, 112 S. Ct. at 508. The case is therefore inconclusive. Because Simon & Schuster is not dispositive, we will turn instead to a line of authority specifically addressing the availability of third party standing when First Amendment rights are at stake.9

In Secretary of State of Maryland v. Joseph Munson Co., Inc., 467 U.S. 947, 104 S. Ct. 2839, 81 L. Ed. 2d 947 (1984), the plaintiff was a professional, for-profit fund-raising company. Maryland enacted a statute prohibiting charitable organizations from paying or agreeing to pay more than 25% of the proceeds from fundraising events as expenses.10 Munson claimed that it regularly charged more

_____

9.  Although neither party discussed this line of authority, we find it helpful to our analysis.

10. An exception was made if a charitable organization was otherwise unable to raise funds.

12

than 25% of the gross for the fund-raising events it organized on behalf of its clients. Munson stated in its complaint that its customers were reluctant to do business with it as a result of the enactment of the statute, and also that the Secretary of State told Munson that the company would be subject to prosecution under the statute. See Joseph Munson Co., Inc., 467 U.S. at 954-55, 104 S. Ct. at 2845-46. The Supreme Court held that Munson did have standing to assert the First Amendment rights of its clients, because the company suffered an injury-in-fact that complied with Article III's standing requirements, and because Munson could adequately frame the issues regarding the rights of these third parties.

In discussing standing, the Munson Court noted the general prudential limitation that plaintiffs generally cannot assert "the legal rights or interests of third parties." Joseph Munson Co., Inc., 467 U.S. at 955, 104 S. Ct. at 2846 (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975)) (additional citations omitted). However, the Court concluded that when a plaintiff attempts to challenge a statute as being an overbroad restriction on First Amendment rights, the requirement that an impediment exist to the third party asserting his or her own rights should be relaxed:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. "Litigants, therefore, are permitted to challenge a statute [in such a case] not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

13

Joseph Munson Co., Inc., 467 U.S. at 956-57, 104 S. Ct. at 2847 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830 (1973) (involving class action challenge to state statute severely curtailing the types of political activity in which state employees could engage)). Munson thus holds that the prudential standards governing the assertion of third party rights may be relaxed in the First Amendment context, when the Court determines that society's interest in preventing the chilling of free speech outweighs the normal prudential concerns that prohibit jus tertii claims.

The fact that prudential standards may be relaxed in appropriate cases, however, does not mean we must relax them in this case. "In determining whether a litigant should be able to assert third-party rights, a crucial factor is `the impact of the litigation on the third-party interests.' " Joseph Munson Co., Inc., 467 U.S. at 956-57 n.7, 104 S. Ct. at 2847 (quoting Eisenstadt v. Baird, 405 U.S. 438, 445, 92 S. Ct. 1029, 1034, 31 L. Ed. 2d 349 (1972)). To circumvent the rule against third party standing, the plaintiff must also demonstrate more than a mere interference with the third party's rights. "Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 634, 100 S. Ct. 826, 834, 63 L. Ed. 2d 73 (1980) (emphasis added) (challenging ordinance prohibiting all door-to-door or on-street solicitation of funds for charities failing to use at least 75% of their proceeds for charitable purposes).

Munson, Eisenstadt, and Village of Schaumburg all involved substantial threats to free speech, such that third parties were forced to forego their rights entirely, or else face criminal prosecution to vindicate them. Thus, application of the prudential rule against third party standing "would have [had] an intolerable, inhibitory effect on freedom of speech" in those cases. Eisenstadt v. Baird, 405 U.S. 438, 445 n.5, 92 S. Ct. 1029, 1034, 31 L. Ed. 2d 349 (1972). They also involved allegations of substantial overbreadth, such that parties who should not have had

14

their freedom of speech restricted nonetheless found that freedom chilled. See Harris v. Evans, 20 F.3d 1118, 1122 n.5 (11th Cir. 1994), cert. denied, 513 U.S. 1045, 115 S. Ct. 641, 130 L. Ed. 2d 546 ("The Supreme Court has recognized that, in certain cases, the risk that a third party's free speech may be `chilled' by an overbroad statute or ordinance may warrant the grant of standing to a party whose speech is not protected by the First Amendment.").

When we look to the effect of Act 199 on the third parties in the present case, however, as we are required to do by Joseph Munson Co., Inc., 467 U.S. at 956-57 n.7, 104 S. Ct. at 2847, we do not see the sort of dangers that have warranted relaxing prudential requirements in the cases cited above. The Pitt News has not demonstrated, as part of its burden in establishing its standing to assert third party rights, that its former advertisers are likely to have their speech chilled by the enactment of Act 199, or that there is a risk they will forego their constitutionally protected rights. Nor has it demonstrated that adult members of the University of Pittsburgh community will find their access to alcohol-related advertisements diluted. In fact, The Pitt News admits that despite enforcement of Act 199, its former advertisers have had an easy time delivering their messages to students and staff of all ages.

> [T]he very same ads that are prohibited in The Pitt News are available to underage students through other newspapers displayed on campus news racks immediately adjacent to The Pitt News. . . . Beer and alcoholic beverage advertisements reach students under age twenty-one through a variety of magazines, radio and television advertisements, and sidewalk billboards, all of which are readily available both on and near the campus.

Appellant's Br. at 39-40.

The third parties in question have thus not suffered substantial abridgement of their free speech rights. Instead, that speech has been channeled to widely available non-student publications that The Pitt News admits are distributed at the same locations as its own newspapers. The content of that speech is thus available to the entire

15

University of Pittsburgh community. The effect on third parties, therefore, is minimal in this case.11 Because we must balance the effect of the challenged statute on third parties against the importance of the prudential rule prohibiting third party standing, we therefore conclude that The Pitt News does not qualify for an exception to this prudential standing rule.12

That Act 199 has not had a sufficiently noticeable effect on free speech to warrant third party standing should not be surprising. As the Supreme Court has recognized,"[f]or the purposes of applying the overbreadth doctrine . . . it remains relevant to distinguish between commercial and noncommercial speech." Village of Schaumburg , 444 U.S. at 632 n.7, 100 S. Ct. at 834.

> [T]he justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. . . . [T]here are `commonsense differences' between commercial speech and other varieties. Since advertising is linked to commercial well-being, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation. Moreover, concerns for uncertainty in determining the scope of protection are reduced. . . Since overbreadth has been described by this Court as `strong medicine,' which `has been employed . . . sparingly and only as a last resort,' Broadrick v. Oklahoma, 413 U.S., at 613, 93 S. Ct., at 2916, we decline to apply it to professional advertising, a context where it is not necessary to further its intended objective.

Bates v. State Bar of Arizona, 433 U.S. 350, 380-81, 97 S. Ct. 2691, 2707-08, 53 L. Ed. 2d 810 (1977) (citations omitted). See also Central Hudson Gas & Elec. Corp. v.

_____

11. We note that even the "Fuel & Fuddle," which was actually prosecuted under Act 199, did not find it worthwhile to challenge its constitutionality. This fact is of course hardly dispositive, as many factors go into a decision whether or not to litigate.

12. In reaching this conclusion with regard to third party standing, we of course reach no conclusions regarding whether Act 199 may be successfully challenged on other constitutional grounds.

16

Public Serv. Comm'n of New York, 447 U.S. 557, 564 n.6, 100 S. Ct. 2343, 2350, 65 L. Ed. 2d 341 ("[C]ommercial speech, the offspring of economic self-interest, is a hardy breed of expression that is not `particularly susceptible to being crushed by overbroad regulation.' "). The same reasoning that underlies the limitation of the application of an overbreadth challenge in the commercial context also supports our limitation on third party standing in this context.

C. Likelihood The Pitt News' First Amendment Claim Will Succeed on the Merits

We now proceed to determine whether The Pitt News has demonstrated that it is entitled to preliminary injunctive relief for the indirect economic loss it alleges. In ruling on a motion for a preliminary injunction, the District Court must consider the following factors, and issue an injunction only if all four factors favor preliminary relief: (a) the likelihood that the plaintiff will prevail on the merits of its claim at the final hearing; (b) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (c) the extent to which the defendant would suffer irreparable harm if the preliminary injunction is issued; and (d) the public interest. See New Jersey Hosp. Ass'n v. Waldman, 73 F.3d 509, 512 (3d Cir. 1995). The District Court concluded that even if The Pitt News had standing, the newspaper would not be entitled to a preliminary injunction because it had not shown irreparable harm. We agree that The Pitt News  is not entitled to preliminary injunctive relief. We need not reach the question of irreparable harm, however, because we conclude that The Pitt News has not shown a likelihood of success on the merits of its claim.

The Pitt News claims that its First Amendment rights have been injured by the enforcement of Act 199, even though Section 4-498(e)(5) can only be enforced against advertisers. The Pitt News claims that although it cannot be prosecuted under the Act, the loss of advertising revenue resulting from the Act's enforcement has reduced the amount of space it has available to publish articles and photographs, thereby interfering with its right to freedom of the press.

17

We disagree. The fact that The Pitt News has demonstrated a connection between the enforcement of Act 199 and the reduction in its advertising revenues from purveyors of alcoholic beverages, along with the resulting reduction in the length of its publication, does not mean that one of its constitutionally protected interests has been injured. This amounts to nothing more than an incidental economic effect of a regulation aimed at closely regulated third parties. Act 199 does not directly restrict the content of The Pitt News. It is free to seek advertising from a myriad of sources, including purveyors of alcoholic beverages, so long as those beverages are not mentioned in the advertisements. Additionally, according to the LCB, The Pitt News could, for instance, contact area bars, find out what their nightly drink specials are, and publish a weekly listing of goings-on about town -- so long as The Pitt News did not receive any consideration for doing so. There is thus no direct limitation on the freedom of The Pitt News to publish alcohol-related information.

The fact that The Pitt News is a newspaper does not give it a constitutional right to a certain level of profitability, or even to stay in business at all. The Pitt News "proceeds on the erroneous premise that it has a constitutional right not only to speak, but to speak profitably." AMSAT Cable Ltd. v. Cablevision of Connecticut, 6 F.3d 867, 871 (2d Cir. 1993) (holding that although content of cable television transmissions has First Amendment protection, government regulation that has incidental economic effect of forcing cable operator out of business does not injure operator's First Amendment rights). "[E]conomic loss . .. does not constitute a first amendment injury. `The inquiry for First Amendment purposes is not concerned with economic impact; rather, it looks only to the effect of [an] ordinance upon freedom of expression.' " Warner Cable Communications, Inc. v. City of Niceville, 911 F.2d 634, 638 (11th Cir. 1990), cert. denied, 501 U.S. 1222, 111 S. Ct. 2839, 115 L. Ed. 2d 1007 (1991) (quoting Young v. American Mini Theaters, Inc., 427 U.S. 50, 78, 96 S. Ct. 2440, 2456, 49 L. Ed. 2d 310 (1976) (Powell, J., concurring)). Thus, although it is true that the enforcement of Act 199 has had the effect of driving away certain closely regulated businesses who previously advertised in The Pitt

18

News, this does not in itself amount to a violation of The Pitt News' First Amendment rights.

In an effort to avoid this reasoning, The Pitt News advances a "selective tax" argument. It points to a line of cases holding that it is unconstitutional to impose selective taxes or other financial burdens on newspapers because of their content. See, e.g., Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S. Ct. 1722, 95 L. Ed. 2d 209 (1987) (placing sales tax on certain publications based on their content violates First Amendment). Selective tax cases are distinguishable for two reasons. First, they involve taxes, not regulations on advertising. Second, they involve fees levied directly against a newspaper. In the present case, no taxes or fees have been levied against The Pitt News. Further, as discussed above, the content of The Pitt News is not directly regulated or penalized by Act 199. Therefore, this selective tax argument is unavailing.

Because its constitutional rights have not been infringed, any economic effect on the advertising revenue of The Pitt News is therefore incidental to the challenged regulation. Thus, although The Pitt News has no doubt felt an economic effect resulting from the enforcement of Act 199, this does not amount to a violation of its First Amendment rights.13

---

13. We recognize that portions of The Pitt News' complaint can be construed as asserting an additional right, the newspaper's right to determine its own advertising content. See Complaint PP. 1, 26, 35, 49. It is true that newspapers do have a legitimate First Amendment interest in their advertising content as well as their editorial content, see Bigelow v. Virginia, 421 U.S. 809, 825, 95 S. Ct. 2222, 2234, 44 L. Ed. 2d 600 (1975); however, The Pitt News has not demonstrated that Act 199 poses a concrete threat to that right. Because the LCB has ruled that Act 199 can only be enforced against liquor licensees or manufacturers, Act 199 cannot prevent The Pitt News from publishing information about the prices and availability of liquor. See A. at 236, 262–64, 290 (Deposition of Faith S. Diehl, Chief Counsel of the LCB). Therefore, The Pitt News can claim only that Act 199 poses a threat to the newspaper's ability to receive compensation for publishing this information, not the newspaper's ability to publish the information. As we discussed above, harm to the ability to profit from publication is not a First Amendment harm.

19

V. CONCLUSION

For the reasons stated above, Appellant, The Pitt News, has standing to challenge 47 P.S. S 4-498(e)(5) on its own behalf, but lacks standing to challenge it on behalf of its former advertisers or its adult readers. We therefore do not reach the merits of its constitutional challenges regarding those third parties. As for The Pitt News' own First Amendment challenge, we conclude that the newspaper has not shown a likelihood of succeeding on the merits of its claim that the enforcement of 47 P.S. S 4-498(e)(5) has violated its right to free speech.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

20