**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-2352, 21-2433
_____

NEW JERSEY BANKERS ASSOCIATION

v.

ATTORNEY GENERAL NEW JERSEY


New Jersey Bankers Association,
    Appellant in No. 21-2352
Attorney General New Jersey,
    Appellant in No. 21-2433
_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil No. 3-18-cv-15725)
District Judge: Honorable Brian R. Martinotti
_____

Argued July 14, 2022
_____


Before: GREENAWAY, JR., MATEY, and NYGAARD,
*Circuit Judges*.

(Filed: September 28, 2022)

John D. Haggerty
Lawrence S. Lustberg
Gibbons
One Gateway Center
Newark, NJ 07102

Rachel Rodman [**ARGUED**]
Cadwalader Wickersham & Taft
700 Sixth Street, N.W.
Washington, DC 20001

Jonathan M. Watkins
Cadwalader Wickersham & Taft
650 South Tryon Street
Charlotte, NC 28202

*Counsel for Appellant*

Endel Kolde
Institute for Free Speech
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036

Jonathan S. Franklin
Independent Community Bankers of America
American Bankers Association
Norton Rose Fulbright
799 9th Street, N.W.

Suite 1000
Washington, DC 20001

*Counsel for Amicus Appellant*

Matthew J. Platkin
*Acting Attorney General of New Jersey*
Jeremy M. Feigenbaum
*State Solicitor*
Melissa Dutton Schaffer
*Assistant Attorney General*
Melissa Fich
Timothy Sheehan [**ARGUED**]
*Deputy Attorneys General*
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellee*

Paul M. Smith
Campaign Legal Center
1101 14th Street, N.W.
Suite 400
Washington, DC 2005

*Counsel for Amicus Appellee*

_____

3

OPINION OF THE COURT
_____

**GREENAWAY, JR**., *Circuit Judge*.

In this appeal, New Jersey Bankers Association ("NJBA") asks us to reverse the District Court's holding that the contribution ban in N.J. Stat. Ann. § 19:34-45 [hereinafter § 19:34-45] does not contravene the First Amendment. The Attorney General of New Jersey ("Attorney General") seeks reversal of the District Court's holding that § 19:34-45 encompasses independent expenditures in violation of the First Amendment. Because we hold that § 19:34-45 does not apply to trade associations of banks, we resolve the case on statutory grounds and decline to reach these First Amendment issues. We will reverse the judgment of the District Court and remand.

## I.Background

NJBA is a non-profit member-funded trade association representing 88 banks headquartered in or with branches in New Jersey. It seeks to make independent expenditures and contributions to political parties and campaigns for state and local office in New Jersey. However, it has not made these payments based on the concern that the Attorney General would enforce § 19:34-45 against it.

Section 19:34-45 provides that, among other specified corporations, "[n]o corporation carrying on the business of a bank . . . shall pay or contribute money or thing of value in order to aid or promote the nomination or election of any person, or in order to aid or promote the interests, success or defeat of any political party." In its complaint, NJBA alleged

4

that this statute prohibits it from making independent expenditures and contributions to political parties and campaigns. Throughout this case, NJBA has made no contributions to any New Jersey political party or campaign. It began making independent expenditures only after the District Court invalidated § 19:34-45's prohibition on independent expenditures.

To secure the ability to make independent expenditures and contributions without fear of enforcement under § 19:34-45, NJBA sued the Attorney General of New Jersey in the United States District Court for the District of New Jersey on November 6, 2018. It purported to bring a facial challenge to § 19:34-45 on its own behalf and on behalf of third-party banks. In Count One, NJBA alleged that § 19:34-45 encompasses independent expenditures in violation of the First Amendment. In Count Two, NJBA alleged that § 19:34-45's complete prohibition on contributions by certain corporations is unconstitutional because the statute is not closely drawn to serve the important state interest in combatting *quid quo pro* corruption or its appearance. NJBA sought a declaratory judgment that the ban on independent expenditures and contributions is unconstitutional. It also sought an injunction prohibiting the Attorney General from enforcing the ban on independent expenditures and contributions.

On June 21, 2021, the District Court granted summary judgment in favor of NJBA on Count One, holding that § 19:34-45 prohibits independent expenditures in violation of the First Amendment. It rejected the Attorney General's argument that the statute bars only campaign contributions. Accordingly, it issued a declaratory judgment that the statute "does not ban any entity from making independent expenditures." J.A. 24-25.

5

With regard to Count Two, the District Court granted summary judgment in favor of the Attorney General, holding that § 19:34-45's ban on political contributions by certain corporations does not violate the First Amendment. It held the statute passes intermediate scrutiny. First, it concluded that the statute advances the state's legitimate interest in preventing *quid pro quo* corruption or its appearance. Second, it determined that the statute is closely drawn to its anti-corruption purpose. On this point, the District Court observed that 18 other states have laws banning contributions by some or all corporations—and, in its view, these laws have a scope that is similar to or broader than the New Jersey law. The District Court also noted that statutory alternatives, such as contribution limits and disclosure requirements, would not be as effective in combatting corruption. NJBA appealed the grant of summary judgment on Count Two. The Attorney General cross appealed the grant of summary judgment on Count One.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We review the order granting summary judgment, including the factual and legal questions, de novo. *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 986 F.3d 250, 255 (3d Cir. 2021); *see also Perelman v. Perelman*, 793 F.3d 368, 373 (3d Cir. 2015) (exercising de novo review over the District Court's legal

6

conclusions relating to standing).  We "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 402 (3d Cir. 2016) (internal citation and quotation marks omitted).

## III. NJBA's Article III Standing and Remedy

NJBA has sought to bring a facial challenge to § 19:34-45 on behalf of itself and third-party banks.  Although the parties did not raise standing as an issue in their opening briefs, standing is a "threshold jurisdictional requirement" and we "have an obligation to examine our own jurisdiction." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) (quoting *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)); *see also In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (identifying standing as "a threshold matter").  First, we consider whether NJBA has standing to sue on its own behalf. We conclude that it does.

## A.      Article III Standing Requirements

Article III requires a showing that the plaintiff has: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,[1] and (3) that is likely to

---

[1] Traceability means that the injury was caused by the challenged action of the defendant as opposed to an independent action of a third party. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  We have yet to articulate a single standard for establishing this "causal relationship." *See Khodara Env't, Inc. v. Blakely*, 376 F.3d 187, 195 (3d Cir. 2004).  Instead, we have held that but-for causation is sufficient

7

be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

With regard to the injury in fact element, "we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). Instead, courts have held that a credible threat of prosecution under an allegedly unconstitutional statute constitutes an injury in fact. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The threat may not be merely "imaginary or wholly speculative." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (quoting *Babbit*, 442 U.S. at 302).

The Supreme Court has articulated three factors for establishing "a credible threat of enforcement." *Id.* at 161 (citing *Babbit*, 442 U.S. at 298). First, there must be "an intention to engage in a course of conduct arguably affected with a constitutional interest." *Id.* (quoting *Babbit*, 442 U.S. at 298). Second, the intended conduct must be "arguably . . . proscribed by [the] statute" that the plaintiff seeks to challenge. *Id.* at 162 (quoting *Babbit*, 442 U.S. at 298) (alteration in original). Arguably proscribed is not a stringent test. In *Susan*

---

to satisfy traceability. *See, e.g.*, *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013). So, too, is concurrent causation. *See, e.g.*, *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014).

8

*B. Anthony List*, the Supreme Court deemed it sufficient that a statute appeared broad enough to cover the intended conduct. *Id.* at 162. The Supreme Court also relied on the fact that the entity charged with identifying statutory violations had previously interpreted the statute as applying to the intended conduct. *Id.*

Third, the plaintiff must face a "substantial" "threat of future enforcement" under the statute. *Id.* at 164. For this inquiry, we consider the "history of past enforcement." *Id.*

## B. NJBA Satisfies Article III Standing Requirements

NJBA has Article III standing to sue on its own behalf. First, NJBA has sufficiently alleged an injury in fact. Namely, it has satisfied each of the three factors required for demonstrating a credible threat of enforcement under § 19:34-45. It intends to engage in "conduct arguably affected with a constitutional interest," as it seeks to make independent expenditures and contributions, which implicate the First Amendment. *Id.* at 161; *Citizens United v. FEC*, 558 U.S. 310, 372 (2010) (holding that "restrictions on corporate independent expenditures" are unconstitutional); *FEC v. Beaumont*, 539 U.S. 146, 161 (2003) (stating that "restrictions on political contributions have been treated as merely 'marginal' speech restrictions subject to relatively complaisant review under the First Amendment" (citing *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 440 (2001))).

Next, NJBA's intended conduct is arguably proscribed by § 19:34-45. The statute sets parameters for making "pay[ments] or contribut[ions of] money or thing[s] of value in order to aid or promote the nomination or election of any person, or in order to aid or promote the interests, success or

9

defeat of any political party." § 19:34-45. At least for purposes of Article III standing, this language appears broad enough to cover NJBA's intention to make independent expenditures and contributions to political parties and campaigns. *See Susan B. Anthony List*, 573 U.S. at 162. That the Attorney General of New Jersey issued a 2002 Opinion interpreting § 19:34-45 as applying to trade associations of banks, and has consistently reiterated that position throughout this litigation, confirms our conclusion that NJBA's intended conduct is "arguably proscribed." *See id.*

Lastly, NJBA faces a "substantial" "threat of future enforcement" under § 19:34-45. *Id.* at 164. The Attorney General—the person charged with enforcing the statute—has already articulated that NJBA is subject to the prohibitions in the statute. *See id.* Based on his interpretation, we have no reason to believe that the Attorney General would decline to enforce § 19:34-45 against NJBA if it were to make its intended independent expenditures and contributions.

Injury in fact aside, NJBA satisfies the remaining elements of Article III standing. The credible threat of prosecution is traceable to the Attorney General's enforcement of § 19:34-45, consistent with its 2002 Opinion. *See Spokeo, Inc.*, 578 U.S. at 338. That injury would be redressed by a declaration that § 19:34-45 violates the First Amendment and an injunction against the enforcement of the ban. *See id.*

10

## IV. Section 19:34-45 Does Not Cover Trade Associations of Banks

Because NJBA has standing to sue on its own behalf, we will reach the merits. The parties have asked us to determine whether: (1) § 19:34-45 encompasses independent expenditures in violation of the First Amendment; and (2) the statute's prohibition on contributions withstands scrutiny under the First Amendment.

However, pursuant to well-established constitutional avoidance principles, the threshold question is a statutory one: whether § 19:34-45 applies to NJBA at all. *See Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 102 (3d Cir. 2008) ("As a first inquiry, we must avoid deciding a constitutional question if the case may be disposed of on some other basis." (citing *Spicer v. Hilton*, 618 F.2d 232, 239 (3d Cir. 1980)); *see also Bond v. United States*, 572 U.S. 844, 855 (2014) (observing that it is "a well-established principle governing the prudent exercise of [the Supreme] Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case" (quoting *Escambia County. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam))); *Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 292 n.9 (3d Cir. 2019) ("Principles of constitutional avoidance counsel us to first address whether a statutory ground resolves the case, and thereby renders unnecessary the need to answer the 'constitutional question[.]'"); *United States v. Serafini*, 167 F.3d 812, 815 n.7 (3d Cir. 1999) ("Longstanding practice calls for federal judges to explore all non-constitutional grounds of decision before addressing the constitutional ones[.]"). The applicability of § 19:34-45 turns on whether NJBA qualifies as a "corporation carrying on the business of a bank." We hold that it does not.

11

## A.    Statutory Interpretation

"Our analysis begins and ends with the text[.]" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). In determining whether the meaning of a statutory term is plain, we consider the "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Byrd v. Shannon*, 715 F.3d 117, 123 (3d Cir. 2013) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "[W]here [the legislature's] will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive." *Id.* at 122 (citing *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993)).

## B.    Statutory Analysis

Here, the statutory language—to "carry[] on the business of a bank"—has a reasonably plain meaning. Contemporaneous dictionary definitions reveal that, at bottom, a "corporation carrying on the business of a bank" is one that makes loans and receives deposits. Relevant dictionaries define "bank" as "[a]n institution, of great value in the commercial world, empowered to receive deposits of money, to make loans, and to issue its promissory notes, (designed to circulate as money, and commonly called 'bank-notes' or 'bank-bills,') or to perform any one or more of these functions," *Bank*, Black's Law Dictionary 117 (2d ed. 1910); and "[a]n institution for receiving and lending money . . . . They receive, lend, and transmit money, and issue notes which are used as money, and buy, sell, and collect bills of

exchange . . . ." *Bank*, The Century Dictionary and Cyclopedia 441 (William Dwight Whitney et al. eds. rev., enl. ed. 1911).[2]

Treating the plain meaning as conclusive, we decline to hold that a "corporation carrying on the business of a bank" encompasses NJBA, a trade association of banks. Of note, NJBA does not ask us to adopt that interpretation. Appellant's 2d Supp. Br. 3 ("Under the plain terms of N.J.S.A. 19:34-45 [], Plaintiff is not a 'corporation carrying on the business of a bank.'"). Indeed, NJBA endorses the contemporaneous dictionary definition of banking, and concedes that it does not perform the functions of a bank. Appellant's 2d Supp. Br. 3 (emphasis in original) (NJBA "does not *engage in* banking," as "[n]one of [NJBA's] functions involve making deposits, issuing debt, or transacting in currency.").

## C.    Attorney General of New Jersey's Interpretation

We recognize that our holding contravenes the Attorney General's interpretation. In his 2002 Opinion, he explained

---

[2] These dictionary definitions are consistent with judicial interpretations. We have observed that "[t]he receipt of deposits is banking business, and constitutes the institution of a bank." *United States v. Howell*, 240 F.2d 149, 154 (3d Cir. 1956) (citing *Rosenblum v. Anglim*, 135 F.2d 512, 513 (9th Cir. 1943)). Likewise, the Supreme Court has stated that "[h]aving a place of business where deposits are received and paid out on checks, and where money is loaned upon security, is the substance of the business of a banker." *Warren v. Shook*, 91 U.S. 704, 710 (1875).

that a trade association "must be subject to the same strictures as its individual members" since it is "comprised of [banks] and is funded by them." J.A. 227. He explained that § 19:34-45 is meant "to insulate elected officials from the influence of regulated industries." J.A. 227. In his view, interpreting § 19:34-45 as inapplicable to trade associations would "render[] [the statutory purpose] meaningless if regulated industries could exert the prohibited political influence simply by forming trade associations." J.A. 228.

Initially, we are not bound by the Attorney General's legal interpretations. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 395 (1988) (declining to accept an Attorney General's legal interpretation as authority because "the Attorney General does not bind the state courts or local law enforcement authorities"); *see also Quarto v. Adams*, 929 A.2d 1111, 1117 (N.J. Super. Ct. App. Div. 2007) (noting that it was "not bound to adopt the Attorney General's Formal Opinion as a correct statement of law" although "it is nonetheless entitled to a degree of deference"); *Cole v. Woodcliff Lake Bd. of Educ.*, 382 A.2d 966, 970 (N.J. Super. Ct. Law Div. 1977) (stating that "interpretations of statutes rendered by the Attorney General" are "not binding").

Further, this potential loophole does not allow us to depart from the ordinary meaning of the statute. Only "absurd results and 'the most extraordinary showing of contrary intentions'" would justify such a departure. *First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 403

14

(3d Cir. 1999) (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)).[3]

An absurd result is "an outcome so contrary to perceived social values that [the legislature] could not have 'intended' it." *United States v. Fontaine*, 697 F.3d 221, 228 (3d Cir. 2012) (quoting John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2390 (2003)). As long as the legislature "could have any conceivable justification for a result—even if the result carries negative consequences—that result cannot be absurd." *Ricco v. Sentry Credit, Inc.*, 954 F.3d 582, 588-89 (3d Cir. 2020) (citing *Fontaine*, 697 F.3d at 228).

Interpreting § 19:34-45 to exclude trade associations of banks falls short of the high bar this Court has set. In fact, excluding them makes sense. Trade associations are less likely to pose a risk of *quid pro quo* corruption because their member banks have varying interests, whereas individual banks have uniform interests. Take a trade association with members ranging from a large multi-state bank, a small community

---

[3] Judge Matey agrees that the ordinary meaning of a "corporation carrying on the business of a bank" in N.J. Stat. Ann. § 19:34-45 does not encompass a trade association of banks, but believes it is unnecessary to consider the absurdity doctrine. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 459–61 (2002) (rejecting request to "invoke some form of an absurd results test" where the "statute does not contain conflicting provisions or ambiguous language"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 238 (2012) ("The [absurdity] doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions.").

bank, a regional bank, and a credit union. These entities have unique, and sometimes antagonistic, interests and goals. What one member bank considers to be favorable legislation may be harmful to another member bank. It follows that the member banks are unlikely to seek a uniform *quid pro quo* from political actors. Given that preventing *quid pro quo* corruption or its appearance is the single "legitimate governmental interest for restricting campaign finances," the state legislature may have found it unnecessary to prohibit trade associations of banks from making contributions. *McCutcheon v. FEC*, 572 U.S. 185, 206-07 (2014).

Because we can resolve the case on statutory grounds—namely, by interpreting the statute as inapplicable to trade associations of banks—we decline to reach the First Amendment issues. In doing so, we nonetheless provide complete relief. NJBA seeks to make independent expenditures and contributions; based on our reading of § 19:34-45, it may do so.

**V. Facial Challenge**

In addition to proceeding on the basis of Article III standing, NJBA seeks to bring a facial challenge on behalf of third-party banks. In NJBA's view, resolving its claims on statutory grounds would provide complete relief only for an as-applied challenge. That resolution would do nothing to prevent § 19:34-45 from "continu[ing] to chill banks from exercising their constitutionally protected rights of political expression and association." Appellant's 2d Supp. Br. 3-6. However, NJBA does not satisfy the narrow exception to the general rule against third-party standing. In holding that the statute does not apply to NJBA, we provide all the relief to which NJBA is entitled.

## A.    Prudential Standing Requirements

"Ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party." *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)).  This prudential rule is designed to "avoid deciding questions of broad social import . . . and to limit access to the federal courts to those litigants best suited to assert a particular claim."  *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99-100 (1979).

However, we have recognized an exception to the prudential rule against third party standing.  "Under the First Amendment overbreadth doctrine, a party may bring a facial challenge against a statute, even though it is not unconstitutional as applied to that particular party, because 'the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 537 (3d Cir. 2012) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612 (1973)).  Notably, "[d]eclaring a statute unconstitutional on overbreadth grounds is 'strong medicine' and should be used 'sparingly and only as a last resort.'"  *Id.* (quoting *Broadrick,* 413 U.S. at 613).

To qualify for this exception, the plaintiff must (1) have "suffered an actual injury"; (2) have "a close enough relationship with the party whose rights he or she is asserting"; and (3) there must be "some hindrance to the third party's ability to protect his or her own interests."  *The Pitt News v. Fisher*, 215 F.3d 354, 362 (3d Cir. 2000) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

17

In some cases, the requirement that an impediment exist to the third party asserting his or own rights should be "relax[ed]." *Id.* at 363-64. For instance, we relax this requirement where a statute "substantially abridges the First Amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980) (citations omitted). "[A] mere interference with the third party's rights" is not enough, and only "an intolerable, inhibitory effect on freedom of speech" will suffice. *The Pitt News*, 215 F.3d at 363-64 (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 445 n.5 (1972)).

**B.    NJBA Does Not Satisfy Prudential Standing**

Prudential standing concerns prevent us from concluding that NJBA can assert a third-party claim on behalf of third-party banks. Applying the prudential standing factors from *The Pitt News*, NJBA sustained an "actual injury"— namely, the credible threat of enforcement under § 19:34-45. *See* 215 F.3d at 362; *see also supra* Section III Part B. Further, NJBA has a sufficiently "close enough relationship" with its member banks, as its "primary mission is to represent its members' interests before state and federal government authorities." *See The Pitt News*, 215 F.3d at 362; Dkt. No. 1 ¶ 8.

However, NJBA has failed to allege that some impediment exists to the third-party banks' ability to assert their own rights. *See The Pitt News*, 215 F.3d at 362. This is not necessarily fatal. We can relax this criterion if § 19:34-45 "substantially abridges the First Amendment rights" of third-party banks. *See Village of Schaumburg*, 444 U.S. at 634. But NJBA cannot satisfy that either. A prerequisite to a finding of substantial abridgment is that the plaintiff must actually allege

18

such abridgment of the rights of parties not before the court. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 243 (2002) (finding third-party standing of an association that alleged "that [a law] threatened the activities of its members"). NJBA has not alleged that any of its member banks will sustain a First Amendment injury. The complaint barely mentions the member banks at all. Because NJBA cannot satisfy the third criterion in the prudential standing analysis and does not qualify for the relaxed standard, we hold that NJBA cannot bring a facial challenge behalf of third-party banks.

## VI. Conclusion

Because we hold that NJBA is not a "corporation carrying on the business of a bank" for purposes of § 19:34-45, we will reverse the judgment of the District Court and remand.